## Wright, et al. v. Hunt.

(Decided March 1, 1921.)

### Appeal from Warren Circuit Court.

Mines and Minerals—Oil and Gas Lease—Failure to Use Diligence in Drilling—Cancellation—Finding of Chancellor—Sufficiency of Evidence.—In an action to cancel an oil and gas lease, providing that it should become null and void and all rights thereunder should cease unless the party of the second part commenced a well within one year and continued said operations with due diligence until one well was completed, evidence examined and held to sustain the finding of the chancellor that the lessees, after commencing the well, did not continue the operations with due diligence.

BRADBURN & HARLIN for appellants.

SIMS, RODES & SIMS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On July 26, 1917, L. B. Hunt executed an oil and gas lease to R. L. Wright and H. G. Thayer. The lease con-

tained a provision that it should become null and void, and all rights thereunder should cease, unless the party of the second part commenced a well within one year and continued said operations with due diligence until one well was completed.

On July 2, 1919, Hunt brought suit against the lessees to cancel the lease and to enjoin further operations on the ground that the lessees had failed to continue the operations with due diligence. The chancellor granted the relief prayed for and the lessees appeal.

The only question presented is whether the evidence sustains the finding of the chancellor. It is the contention of appellants that the witnesses for appellee, with possibly one exception, knew nothing of the structure and formation of the land, or of the difficulties which had to be met, and that their testimony was of such little value that the court did not have before it sufficient facts to authorize the cancellation of the lease. There might be some merit in this contention if the witnesses referred to had testified as experts as to the length of time necessary to complete a well. This, however, they did not do. Their testimony was confined to what they saw in connection with the operations, and was to the effect that, for weeks and months at a time, Wright, who had charge of the drilling, was not engaged in drilling, but was occupied with other work. Indeed, Mr. Wright's own deposition shows that the work was not prosecuted with due diligence. He says he began drilling in April or May, 1918, and went to a depth of 102 feet. He had several breakdowns, and did not reach that depth until the following October. He then abandoned the first well and began drilling at another place. He lost three weeks on account of the death of his father, and twenty-five or thirty days because he could not get help. On that hole he went to a depth of about 80 feet. This depth was reached about December 1, 1918, and up to the time he testified, which was on August 30, 1919, he had not drilled any farther, but had spent his time fishing for tools that were lost in the hole. He was of the opinion, however, that with no breakdowns and everything going all right he could complete a well in thirty-five days. Though admitting that at other places a distance of from 15 to 30 feet might be drilled in twelve hours, he stated that he could not average more than 10 feet a day if everything worked all right. Even if this was the best that could be done, it would seem that, notwithstanding all the breakdowns and

troubles which he had, he could have drilled much deeper than 80 feet in a period of seven months. In view of this evidence, and other evidence that the usual time for drilling a well was about six weeks and never over five months, we are of the opinion that the evidence fully sustains the finding of the chancellor.

Judgment affirmed.